# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION

| | |
|---|---|
| OUTPOST CAPITAL MANAGEMENT, LLC and BILL LAGGNER,<br><br>Plaintiffs,<br><br>-against-<br><br>ROBERT PRIOLEAU, as Manager of HMB Ventures, LLC, HMB VENTURES, LLC, and HALSEY MINOR,<br><br>Defendants. | Civil Action No. 2:16-cv-3684-RMG<br><br>**PLAINTIFFS' OMNIBUS OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS ROBERT PRIOLEAU, HMB VENTURES, LLC, AND HALSEY MINOR** |

By: /s/ Michael A. Scardato
    Michael A. Scardato (FED ID 03744)
    MCNAIR LAW FIRM, P.A.
    100 Calhoun Street, Suite 400
    Charleston, SC 29401
    Tel: (843) 723-7831

    Michael Q. English
    Evan I. Cohen
    FINN DIXON & HERLING LLP
    6 Landmark Square
    Stamford, CT  06901
    Tel: (203) 325-5000

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ...................................................................................................... 6

I.    The Court Has Jurisdiction Over Defendants Minor and HMB ...................... 6

    A.    Applicable Law ......................................................................................... 6

    B.    This Court Should Exercise General Jurisdiction Over Minor ................... 8

    C.    Minor is Subject to Specific Jurisdiction in South Carolina Relating to the
       Agreement and the Subject Shares of Uphold ........................................ 9

    D.    HMB Is Subject to this Court's Jurisdiction by the Actions of Prioleau as
       its Agent ................................................................................................ 14

II.   Venue in This Court is Proper ..................................................................... 15

III.  Plaintiffs Have Stated a Breach of Contract Claim Against Prioleau and HMB
    Ventures, LLC ............................................................................................ 17

    A.    Prioleau Signed the Agreement and is a Party Thereto ......................... 17

    B.    Prioleau, as Manager of HMB, Had Authority to Execute the Agreement
       and to Bind HMB to the Agreement ...................................................... 18

    C.    Prioleau's Removal as Manager Does Not Excuse his Breach ............... 20

IV.   Plaintiffs Have Sufficiently Plead a Civil Conspiracy Claim ........................ 21

    A.    The Alleged Actions Are Not Unilateral Actions by Minor or Duplicative ........ 21

    B.    Plaintiffs Have Plead Special Damages ............................................... 22

CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

Page

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,*
   293 F.3d 707 (4th Cir. 2002) ................................................................. 8, 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................ 6

*Ashmore v. Allied Energy, Inc.,*
   2015 WL 128596 (D.S.C. Jan. 9, 2015) ................................................ 16

*Ashmore v. Williams,*
   2016 WL 4475043 (D.S.C. Aug. 25, 2016) ........................................... 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................ 6

*Benedict College v. National Credit Systems, Inc.,*
   735 S.E.2d 518 (S.C. Ct. App. 2012) .................................................... 23

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
   334 F.3d 390 (4th Cir. 2003) ........................................................ 7, 9, 11

*Carey's Home Constr., LLC v. Estate of Myers,*
   2014 WL 1724835 (Del. Sup. Ct. Apr. 16, 2014) ................................. 17

*Certus Bank, N.A. v. Bennett,*
   2016 WL 757501 (S.C. Ct. App. Feb. 24, 2016) ................................... 15

*CFA Inst. V. Inst. Of Chartered Fin. Analysts of India,*
   551 F.3d 285 (4th Cir. 2009) ................................................................. 10

*Christian Science Bd. of Directors of First Church of Chris, Scientist v. Nolan,*
   259 F.3d 209 (4th Cir. 2001) ................................................................. 7

*Combs v. Bakker,*
   886 F.2d 673 (4th Cir. 1989) ................................................................. 6, 7

*Conley v. Gibson,*
   355 U.S. 41 (1957) ................................................................................. 6

*ESAB Group, Inc. v. Centricut, LLC,*
   34 F. Supp. 2d 323 (D.S.C. 1999) ......................................................... 7

*Foster v. Arletty 3 Sarl,*
   278 F.3d 409 (4th Cir. 2002) ................................................................. 7

*Grayson Consulting, Inc. v. Cathcart,*
  2013 WL 6490175 (D.S.C. Dec. 10, 2013) ........................................................... 13

*Hammond v. Honda Motor Co., Ltd.,*
  128 F.R.D. 638 (D.S.C. 1989) ............................................................................. 14

*Heliocopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) ..................................................................................... 8, 9, 11

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................. 7

*Integrity Worldwide, Inc. v. Int'l Safety Access Corp.,*
  2015 WL 1297823 (D.S.C. Mar. 23, 2015) ........................................................ 23

*Jones v. Buck,*
  90 A. 86 (Del. Sup. Ct. 1914) .............................................................................. 17

*Lindsey v. Cargotec USA, Inc.,*
  2010 WL 3397355 (W.D. Ky. Aug. 26, 2010) .................................................... 14

*Loftus v. F.D.I.C.,*
  989 F. Supp.2d 483 (D.S.C. 2013) ...................................................................... 19

*Long v. Baldt,*
  464 F. Supp. 269 (D.S.C. 1979) .......................................................................... 11

*McNeil v. Sherman,*
  2009 WL 3255240 (D.S.C. Oct. 7, 2009) ................................................ 10, 11, 12

*MetCap Securities LLC v. Pearl Senior Care, Inc.,*
  2007 WL 1498989 (Del. Ch. May 16, 2007) ...................................................... 19

*Milliken v. Meyer,*
  311 U.S. 457 (1940) ............................................................................................. 7

*Moore v. Weinberg,*
  644 S.E.2d 740 (S.C. Ct. App. 2007) .................................................................. 22

*Mylan Labs., Inc. v. Akzo, N.V.,*
  2 F.3d 56 (4th Cir 1993) ..................................................................................... 14

*North American Steel Connection, Inc. v. Watson Metal Products Corp.,*
  2013 WL 1095445 (3d Cir. Mar. 18, 2013) ....................................................... 20

*Oppenheimer Fund, Inc. v. Sanders,*
  437 U.S. 340 (1978) ........................................................................................... 14

*Ostrzenski v. Seigel,*
    177 F.3d 245 (4th Cir. 1999) ................................................................. 6

*Petition of Mulco Products, Inc.,*
    123 A.2d 95 (Del. Sup. Ct. 1956) ......................................................... 18

*Red Bone Alley Foods, LLC v. Nat'l Food and Beverage, Inc.,*
    2014 WL 1093052 (D.S.C. Mar. 14, 2014) .......................................... 10

*Reid v. Spazio,*
    970 A.2d 176 (Del. 2009) ...................................................................... 21

*Schreiner v. Patriarch Partners, LLC et. al.,*
    No: 2:14-cv-220, 2014 WL 11034777 (D.S.C. Nov. 7, 2014) ............... 14

*Sonoco Prods. Co. v. ACE INA Ins.,*
    877 F. Supp. 2d 398 (D.S.C. 2012) ........................................................ 7

*Sonoco Products Co. v. Inteplast Corp.,*
    867 F. Supp. 352 (D.S.C. 1994) ............................................................. 7

*Southern Plastics Co. v. Southern Commerce Bank,*
    310 S.C. 256 (S.C. 1992) ........................................................................ 7

*Tire Eng'g & Distribution, LLC v. Shandong Linglong,*
    682 F.3d 292 (4th Cir. 2012) ................................................................ 13

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3d Cir. 2003) ................................................................. 14

*Troy H. Cribb & Sons, Inc. v. Cliffstar Corp.,*
    258 S.E.2d 108 (S.C. 1979) .................................................................. 15

*VLIW Technology, LLC v. Hewlett-Packard Co.,*
    840 A.2d 606 (Del. 2003) ..................................................................... 17

**Statutes**

Del. Gen. Stat. § 18-402 ................................................................................ 20

S.C. Code § 36-2-802 ...................................................................................... 8

S.C. Code Ann. § 36-2-803(A) ..................................................................... 10

S.C. Code Ann. § 36-2-803(A)(1)-(2) .......................................................... 15

Title 28, U.S.C. § 1391(b)(2) ........................................................................ 15

Title 28, U.S.C. § 1404(a) ............................................................................. 16

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................... 6

Plaintiffs Outpost Capital Management, LLC ("Outpost") and Bill Laggner ("together with Outpost, the "Plaintiffs"), by and through their undersigned attorneys, submit this opposition to the motions to dismiss of Defendants Robert Prioleau, HMB Ventures, LLC ("HMB") and Halsey Minor.

## INTRODUCTION

Defendants' attempt to dismiss the Amended Complaint—and avoid their contractual obligations after Plaintiffs fully performed under the contract—relies on a fundamental distortion of the parties' Agreement (as defined herein), the Federal Rules of Civil Procedure and well-settled South Carolina law.  Grasping at straws, Defendants Minor and HMB claim that this Court lacks personal jurisdiction over them, while completely ignoring Minor's systematic and continuous contacts with South Carolina.  Documentary evidence reveals that Minor has conducted business continuously in South Carolina since at least 2013.  Minor's contacts with South Carolina include (i) leading a multi-day investor presentation to solicit seed money for Bitreserve, Ltd.—whose shares are the subject of this action—in Charleston, South Carolina in October 2013; (ii) selecting South Carolina for Bitreserve, Ltd.'s initial headquarters based on the State's favorable regulatory environment; (iii) living in South Carolina for the entire month of July 2015; (iv) selecting Prioleau, a South Carolina resident, to serve as the trustee of Minor's shares in Bitreserve, Ltd.; and (v) requiring that Prioleau sign the Agreement, which was to be performed by Prioleau in South Carolina.  As a result of Minor's systematic and continuous contacts with South Carolina, this Court has both general and specific jurisdiction over Minor.

Defendants' substantive arguments fare no better.  As a threshold matter, Prioleau's brief operates under the fallacy that Prioleau was not a party to the Agreement and had no ability to perform his contractual obligations in 2016.  Both contentions contravene the Amended Complaint's well-plead allegations, which must be accepted as true for purposes of this motion,

and are belied by Prioleau's signature on the Agreement and his hand-written covenant that he "reviewed this Agreement and agree to fulfill its terms as to the shares and [Minor] in my capacity as trustee and acknowledge full receipt of the consideration paid for said shares." In short, Prioleau's post hoc attempt to distance himself from his obligations under the Agreement must fail.

Defendants' attempts to dismiss the civil conspiracy claim are equally unavailing. Defendants' arguments contradict the well-plead allegations of the Amended Complaint and well-established South Carolina law. Contrary to Defendants' contention, the Amended Complaint does not allege mere unilateral action on Minor's part. Rather, the Amended Complaint explains that, following the filing of the initial Complaint, Prioleau, Minor and HMB conceived and executed a scheme together to denude this Court of its ability to effectuate a remedy for Plaintiffs. Defendants also claim that the Amended Complaint did not plead the necessary element of special damages, which is simply false. The Amended Complaint's core allegation of special damages—that Defendants' conspiracy caused Plaintiffs to incur additional attorneys' fees and expenses—plainly meets South Carolina's pleading standard for special damages. Accordingly, each of Defendants' contentions fails, and this Court should deny Defendants' motions to dismiss in their entirety.

## STATEMENT OF FACTS

The Amended Complaint alleges that Defendants Prioleau, Minor and HMB each failed to fulfill their obligations in a very simple contract (the "Agreement"); compounding this willful breach, the Defendants then concocted and executed a scheme to deprive this Court of the ability to enforce the terms of the Agreement during the pendency of this action.

In June 2016, Plaintiffs entered into the Agreement with Defendants Prioleau, Minor and HMB. *See* Amended Compl. ¶ 1. The Agreement called for Plaintiffs to purchase a total of

9,687,780 shares (the "Shares") of Bitreserve, Ltd., now doing business under the name Uphold, Inc. (the "Company") in exchange for monetary consideration. *Id.* ¶ 2. At the time the Agreement was executed, the Shares were held by HMB, of which Defendant Minor was the sole Member and Defendant Prioleau was the Manager. *Id.* ¶ 21. Minor founded the Company in 2014, and established the headquarters of the operating company, Bitreserve HQ, Inc., in South Carolina to take advantage of South Carolina's favorable regulatory scheme for money transfer businesses. Affidavit of Bill Laggner ("Laggner Aff."), dated March 28, 2017, ¶ 5; Scardato Ex. 14.[1]

Minor previously owned the Shares, but transferred ownership of the Shares to HMB in 2015 in order to "relinquish[] any right to vote [Minor's] Bitreserve Shares and any right to exercise control or influence over the voting of his Bitreserve Shares." *Id.* ¶ 22. More specifically, Minor transferred the Shares to HMB because "[i]n some countries [Minor's] significant ownership [in the Company] is a problem for regulatory reasons." *See* Scardato Ex. 1. In order to satisfy those regulators, Minor could not have the ability to "vote [his] own shares" and had to "put all of [his] Bitreserve stock in a trust." *Id.* In July 2015, Minor asked Prioleau to serve as the trustee of that trust. Amended Compl. ¶ 21.[2] Minor offered to give Prioleau, a South Carolina resident, valuable stock options of the Company in exchange for Prioleau's serving in the role of trustee. *See* Scardato Ex. 2. Minor followed through on that

---

[1] References to "Scardato Ex. __" contained herein refer to the Exhibits attached to the Affidavit of Michael Scardato. These are documents that are either available in the public record or which were produced by Defendant Prioleau in the course of discovery. "In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment." *Ashmore v. Williams*, 2016 WL 4475043, at*2 (D.S.C. Aug. 25, 2016).

[2] Minor refers to Prioleau's role as "trustee" in communications with Plaintiffs, *see, e.g.,* Scardato Ex. 1; neither Minor nor Prioleau, who signed the Agreement as "trustee" appear to have understood the legal responsibilities of a Manager in 2016.

promise and on August 31, 2015 had the Company authorize a stock option award to Prioleau giving him the option to purchase a total of 26,750 shares of the Company. *See* Scardato Ex. 3. In 2016, Prioleau received additional stock options of the Company as compensation for serving as the Manager of HMB. *See* Scardato Ex. 4.

On September 24, 2015, HMB executed its Limited Liability Company Agreement (the "LLC Agreement"), which set forth the rights of Prioleau as Manager of HMB. *See* Scardato Ex. 5. Specifically, the LLC Agreement provided:

> "[i]f the Member instructs the Manager to sell, convey, restrict or encumber any Bitreserve Shares held by [HMB], the Manager shall take all steps necessary to comply with such instructions. The Manager shall not sell, convey, restrict or encumber any Bitreserve Shares held by [HMB], or enter any agreement for the sale, conveyance, restriction or encumbrance of such shares, without prior written consent of the Member."

Amended Compl. ¶ 28. Prior to Prioleau's execution of the Agreement, Minor provided his explicit written consent to Prioleau to transfer the Shares to Plaintiffs via email (copying Plaintiffs): "Robert I have reviewed the [A]greement and personally signed it and I'm comfortable with you signing it. As soon as possible would be helpful. It's part of our financing." Scardato Ex. 6. Thereafter, Prioleau hand-wrote on the Agreement:

> I have reviewed the Agreement and agree to fulfill its terms as to the Shares and [Minor] in my capacity as trustee and acknowledge full receipt of the consideration paid for said shares.

Amended Compl. ¶ 27; Scardato Ex. 7. Prioleau then signed the Agreement in South Carolina and sent it to Plaintiffs.

The Plaintiffs satisfied their obligations under the Agreement in June 2016. Amended Compl. ¶ 30. In July 2016, the Company's Board of Directors approved the Company's next round of financing, thereby satisfying the final condition precedent triggering Prioleau's obligation to transfer the Shares to Plaintiffs. *See* Amended Compl. ¶ 30-31. Notwithstanding

his covenant to satisfy the terms of the Agreement, Prioleau refused to transfer the Shares to

Plaintiffs, thereby breaching the Agreement.  Plaintiffs' counsel sent a demand letter to Prioleau

in October 2016 seeking his compliance with the Agreement.  Rather than doing so, Prioleau

informed Minor that he had received the demand letter and asked "[a]nything I need to do

with/about this?" *See* Scardato Ex. 8.  In response, Minor said that Prioleau "may have to sign a

document." *See id.*

Prioleau failed to respond to Plaintiffs' demand letter and Plaintiffs filed the initial

complaint (the "Original Complaint") in this action on November 18, 2016, which alleged a

single count for breach of the Agreement against Prioleau, as trustee of HMB.  Upon receipt of

service of the lawsuit, Prioleau once again looked to Minor for direction, asking the following

questions in an email to Minor:

- what is the background?
- what is the lawsuit about?
- what are the steps involved?
- what risk do I have?
- what do I need to do with this summons/court trial?

Scardato Ex. 9.  Minor asserted control over Prioleau's actions in South Carolina, responding

"Don't worry.  I should be getting one soon and I will get it to the lawyers.  You won't have to

do anything." *Id.*  Minor thereafter instructed Prioleau about his plan, and offered to "pay

[Prioleau's] costs and you will be indemnified from any actions."  Scardato Ex. 10.  In short,

Minor took control of Prioleau's response to the Complaint and began orchestrating a scheme

with Prioleau and HMB to deprive this Court of its ability to effectuate the remedies sought by

Plaintiffs in the Complaint.  Amended Compl. ¶ 37.

Prioleau filed his answer to the Original Complaint on December 15, 2016 (the

"Answer").  In his Answer, Prioleau admitted that he signed the Agreement and agreed to "fulfill

its terms as to the [S]hares" and "acknowledged full receipt of the consideration paid for said [S]hares." *See* Answer ¶ 19. Notwithstanding this admission, Prioleau denied that he "has the authority to effectuate the transfer of [the] [S]hares." *Id.* ¶ 3. The next day, December 16, 2016, Minor signed a document titled "Termination as Manager" which purported to be on behalf of HMB that removed Prioleau as Manager of HMB, effective as of that date. *See* Amended Compl. ¶ 36. Thereafter, on February 2, 2017, Plaintiffs filed the Amended Complaint, which added HMB and Minor as additional defendants and added claims for breach of contract accompanied by a fraudulent act and civil conspiracy.

## ARGUMENT

I.    **The Court Has Jurisdiction Over Defendants Minor and HMB**

A.    **Applicable Law**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *See Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). To defeat such a motion, the plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint should not be dismissed for failure to state a claim when it contains sufficient factual matters that, when accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, this burden is light: the plaintiff need only make a "prima facie showing of a

sufficient jurisdictional basis." *Id.* The Court must construe the parties' pleadings, affidavits, and other supporting documents "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff.").

To assert jurisdiction over a non-resident defendant, Plaintiffs must satisfy two conditions: (1) that the exercise of jurisdiction is authorized by South Carolina's long-arm statute, and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g., Christian Science Bd. of Directors of First Church of Chris, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statue to extend to the constitutional limits of due process. *See Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 130-31 (S.C. 1992); *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, dual jurisdictional requirements collapse into a single inquiry: whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC,* 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *Sonoco Products Co. v. Inteplast Corp.*, 867 F. Supp. 352, 352 (D.S.C. 1994).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). This jurisdictional standard can be met in several ways, including a determination that the defendants are subject to: (i) general jurisdiction, (ii) specific jurisdiction for certain claims, or (iii) jurisdiction under an agency theory. *E.g., ALS Scan, Inc. v.*

*Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Heliocopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

**B.    This Court Should Exercise General Jurisdiction Over Minor**

General jurisdiction may be exercised over an out-of-state defendant when the defendant's contacts with South Carolina are "continuous and systematic." *Heliocopteros*, 466 U.S.at 416. General jurisdiction is governed by South Carolina Code, Section 36-2-802, which provides that "A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action." Minor has been continuously and systematically conducting business in South Carolina since at least 2013. Minor's business activities within the State include the following:

(i) Using South Carolina to pitch potential seed investors on the concept of the Company during a series of meetings in Charleston in the autumn of 2013; *see* Laggner Aff. at ¶ 6; Scardato Ex. 13;

(ii) As the founder and CEO of the Company, selecting South Carolina to be the headquarters for Uphold's operating company based, in part, on South Carolina's favorable laws relating to the regulation of money transfer companies; *see* Laggner Aff. at ¶ 5;[3]

(iii) Serving as CEO of a company headquartered in South Carolina for several years; *see* Scardato Exs. 14-15.

(iv) Living in Kiawah Island, South Carolina for approximately one month in July 2015 while serving as CEO and chairman of Uphold; *see* Scardato Ex. 1; and

(v) Selecting Prioleau—a South Carolina resident—to serve as Manager of HMB, which Minor controlled as the sole member, after engaging in communications and meeting with Prioleau in South Carolina in July 2015 and arranging payment for Prioleau in South Carolina; *see* Scardato Exs. 1-2, 5.

---

[3] In addition, the Company's Membership agreement, which uses the South Carolina operating company as the contracting party, specifically chooses to be governed by South Carolina law and requires any opt out of the Arbitration Agreement to be sent to a South Carolina address. *See* Scardato Ex. 16.

Given Minor's extensive business conduct in South Carolina, Minor's complaints about this Court's exercise of jurisdiction over him ring hollow. As the documentary evidence and affidavits demonstrate, general jurisdiction over Minor in South Carolina comports both with due process and with Minor's own expectations.

### C.    Minor is Subject to Specific Jurisdiction in South Carolina Relating to the Agreement and the Subject Shares of Uphold

In addition to general jurisdiction, this Court has specific jurisdiction over Minor relating to the breach of contract and civil conspiracy claims set forth in the Amended Complaint, as those claims arise out of Minor's (i) entry into the Agreement, which was to be performed in South Carolina and which Minor specifically instructed Prioleau to sign in South Carolina; (ii) Minor's business relationship with Prioleau in South Carolina; and (iii) Minor's commission of a tort in South Carolina. Neither Minor's affidavit nor his brief address Minor's satisfaction of these provisions of South Carolina's long-arm statute. As the documentary evidence and affidavits demonstrate, Minor engaged in systematic, in-person contacts with South Carolina starting in at least 2013.

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *E.g., Carefirst,* 334 F.3d at 397 (citing *ALS Scan,* 293 F.3d at 711-12; *Helicopteros,* 466 U.S. at 414 & n. 8).

South Carolina's long-arm statute provides, in relevant part, that "A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action from the person's: (1) transacting business in this State . . . (3) commission of a tortious act in whole

or in part in this State . . . or (7) entry into a contract to be performed in whole or in part by either

party in this State . . . ."  S.C. Code Ann. § 36-2-803(A).

In conducting its "individualized and pragmatic inquiry" of the facts surrounding the

defendant's establishment of minimum contacts with the forum state, courts look to multiple

factors, including whether:

(i)     the defendant initiated the contractual relationship,

(ii)    the contract would be performed, in part, in South Carolina;

(iii)   the agreement created any ongoing obligations or relationship among the
        contracting parties;

(iv)    the defendant maintains offices or agents in South Carolina;

(v)     the defendant deliberately engaged in significant or long-term business
        activities in South Carolina;

(vi)    the defendant made in-person contact with a resident of South Carolina
        regarding the business relationship; and

(vii)   the nature, quality and extent of the parties' communications about the
        agreement or business.

*Red Bone Alley Foods, LLC v. Nat'l Food and Beverage, Inc.,* 2014 WL 1093052, at *4 (D.S.C.

Mar. 14, 2014) (finding defendant subject to specific jurisdiction on account of defendant's long-

term business activities in South Carolina, contractual performance in South Carolina, in-person

contact with plaintiff in South Carolina, and emails with plaintiff in South Carolina); *McNeil v.*

*Sherman*, 2009 WL 3255240, at *4 (D.S.C. Oct. 7, 2009) (finding jurisdiction when defendant

knowingly established an ongoing business relationship with a South Carolina resident);  *CFA*

*Inst. V. Inst. Of Chartered Fin. Analysts of India*, 551 F.3d 285, 294-97 (4th Cir. 2009) (finding

defendant subject to personal jurisdiction where defendant initiated business with plaintiff in

forum state, corresponded with plaintiff over an extended period and made in person contact

with plaintiff twice). *McNeil* is particularly instructive. In *McNeil*, the out-of-state defendant never stepped foot into South Carolina. Notwithstanding this fact, this Court held that specific jurisdiction had been satisfied because the defendant initiated a contractual relationship with a South Carolina resident requiring performance of the contract in South Carolina and which established an ongoing business relationship with a South Carolina resident. *Id.* at *4-6.

Courts have made clear that even a single contact with South Carolina is sufficient to give this Court personal jurisdiction over a non-resident defendant: "The United States Supreme Court, the South Carolina Supreme Court, and the lower federal courts construing cases arising in South Carolina, have all held that a single contact with this state is sufficient to give the forum personal jurisdiction over the defendant when that contact gives rise to, or figures prominently in, the cause of action under consideration." *Long v. Baldt*, 464 F. Supp. 269, 275 (D.S.C. 1979); *see also C.B. Askins v. Firedoor Corp.*, 281 S.C. 611, 616 (Ct. App. 1984) ("The cases are legion that a single contact with the forum state is sufficient to give its courts [specific] personal jurisdiction over a nonresident if the contact gives rise to, or figures prominently in the cause of action under consideration.").

Here, Minor's contacts with South Carolina are far from a random, fortuitous or attenuated nature. Instead, as set out in the Amended Complaint, Minor's continuous and purposeful actions in and directed at South Carolina easily meet the standards for specific jurisdiction established by the Supreme Court in *Helicopteros* and the Fourth Circuit in *Carefirst*. Minor purposefully availed himself of the privilege of conducting business under South Carolina's laws by satisfying three of the independent bases identified in South Carolina's long-arm statute. First, Minor cannot dispute that he entered into the Agreement with a South Carolina resident, Prioleau, that called for performance of the Agreement in South Carolina and

which created an ongoing relationship with Prioleau. Prioleau's performance of the contract in South Carolina was the critical feature that Plaintiffs bargained for in the Agreement. *See* Email – Prioleau 00038. As in *McNeil*, these factors alone establish specific jurisdiction. *McNeil* at 2009 WL 3255240, at *4.

Second, there is no question that Minor himself initiated the contractual relationship with Prioleau that resulted in the Agreement by selecting Prioleau as the Manager of HMB in 2015. This relationship was hammered out during an in-person meeting set up by Minor while communicating from South Carolina, where Minor rented property on Kiawah Island for the month of July 2015. *See* Scardato Ex. 1. Minor compensated Prioleau for his service as Manager by awarding him coveted stock options of the Company.[4] *See* Scardato Exs. 3-4. This ongoing transaction of business with Prioleau within South Carolina is, in and of itself, sufficient to establish specific jurisdiction over Minor.

Third, Minor committed a tortious act in South Carolina when he schemed to remove Prioleau as Manager of HMB *after* Plaintiffs commenced the instant action in an effort to prevent Prioleau from transferring the Shares and attempting to undermine this Court's ability to enforce the terms of the Agreement. Minor does not challenge this claim in his motion to dismiss, effectively conceding that Plaintiffs have plead a viable cause of action for breach of contract accompanied by a fraudulent action.

Moreover, Minor engaged in multiple communications with Prioleau during which Prioleau was located in South Carolina regarding both the Agreement and the civil conspiracy. Indeed, Defendants' machinations to remove Prioleau as Manager of HMB involved email communications with Prioleau in South Carolina that have been produced in this litigation. *See,*

---

[4] Although Prioleau's stock options require that he be employed by the Company or a subsidiary, it is unclear what role—if any—that Prioleau had at the Company.

*e.g.*, Scardato Exs. 10-12. Coupled with Minor's long-standing use of South Carolina to operate Uphold's business and conduct presentations to investors, specific jurisdiction is plainly established.[5]

The second prong of the specific jurisdiction analysis "require[s] that the plaintiff's claims arise out of activities directed at the forum state." *Grayson Consulting, Inc. v. Cathcart*, 2013 WL 6490175, at *5 (D.S.C. Dec. 10, 2013) (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong*, 682 F.3d 292, 303 (4th Cir. 2012)). The analysis of this element is "generally not complicated." *Id.* Stated simply, "Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied." *Id.* (quoting *Tire Eng'g & Distribution*, 682 F.3d at 303) .. Here, the Amended Complaint's allegations make clear that Plaintiffs' injuries resulted directly from (i) Prioleau's failure to transfer the shares to Plaintiffs from South Carolina, where Prioleau resides; (ii) Minor's attempt to remove Prioleau as Manager of HMB during the pendency of this action; and (iii) and Minor's, Prioleau's and HMB's conspiracy to deprive Plaintiffs of the right to the Shares. Accordingly, this element is plainly met.

Finally, the third prong of the specific jurisdiction analysis—whether the exercise of personal jurisdiction would be constitutionally reasonable—is easily satisfied. Minor, a Beverly Hills resident who regularly travels to South Carolina, would not be inconvenienced by having to travel to South Carolina for this action. Indeed, it hardly offends "notions of fair play" for the Court to exercise jurisdiction over an individual who spent an entire month in South Carolina as recently as July 2015. Moreover, this Court has a strong interest in adjudicating the dispute involving the breach of a contract by a South Carolina resident and the attempted removal of this

---

[5] Minor's affidavit fails to mention *any* of Minor's substantial contacts with South Carolina. For example, Minor did not inform the Court how often he visits South Carolina, how often he communicated with Prioleau in South Carolina relating to the Agreement or Prioleau's role as Manager of HMB, or whether he instructed Prioleau to sign the Agreement in South Carolina, among other relevant jurisdictional facts.

Court's remedial powers by Defendants' scheme. Plaintiffs have a strong interest in obtaining convenient and effective relief, which will be most efficiently adjudicated in South Carolina, where (unlike California) all three defendants maintain a presence.

Given his longtime, systematic ties to South Carolina, and his intentional selection of Prioleau to serve as trustee of the Shares, exercising jurisdiction over Minor plainly comports with the standards of fair play and substantial justice established by the Supreme Court.[6]

### D. HMB Is Subject to this Court's Jurisdiction by the Actions of Prioleau as its Agent

This Court plainly has jurisdiction over HMB under agency principles. It is well-settled that the actions of one party may be imputed to another if it has acted as an "agent" of the nonresident party. *Schreiner v. Patriarch Partners, LLC et. al.*, No: 2:14-cv-220 (RMG), 2014 WL 11034777 (D.S.C. Nov. 7, 2014). "Agency must be provided by the party asserting the relationship exists," and is generally determined "by evaluating the amount of control and supervision exercised by one entity over another." *Hammond v. Honda Motor Co., Ltd.*, 128 F.R.D. 638, 643 (D.S.C. 1989); *see also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir 1993) (agency test applied by Maryland courts "allows a court to attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary").

---

[6] If the Court determines that the Amended Complaint contains insufficient factual information to support the exercise of jurisdiction over Minor or HMB, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery to obtain additional facts regarding Minor's and HMB's contacts with South Carolina. The Supreme Court has found that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). "In recognition of this, many courts defer ruling on motions to dismiss for lack of personal jurisdiction until the parties have had an opportunity to conduct discovery relating to establishing jurisdiction." *Id.* (collecting cases). Stated simply, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Lindsey v. Cargotec USA, Inc.*, 2010 WL 3397355, at *1 (W.D. Ky. Aug. 26, 2010) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

South Carolina's long-arm statute expressly provides that a court may exercise jurisdiction over anyone who by itself or "by an agent" transacts any business in the State or contracts to provide any service or "things" in the State. S.C. Code Ann. § 36-2-803(A)(1)-(2). It is well-established that "managers of a manager-managed LLC are agents of the LLC." *Certus Bank, N.A. v. Bennett*, 2016 WL 757501 at *2 (S.C. Ct. App. Feb. 24, 2016). Prioleau, as Manager of HMB with authority to act on HMB's behalf, was unquestionably the agent of HMB with respect to the Agreement. Consequently, HMB is subject to personal jurisdiction under South Carolina's long-arm statute. Stated simply, since HMB (through Prioleau) entered into the Agreement in South Carolina and was obligated to satisfy its obligations under the Agreement by transferring the Shares to Plaintiffs from South Carolina, it is subject to this Court's jurisdiction. *See, e.g.*, *Troy H. Cribb & Sons, Inc. v. Cliffstar Corp.*, 258 S.E.2d 108, 109 (S.C. 1979) ("It is inconceivable that appellant would authorize respondent to submit bids on its behalf, knowing that respondent's corporate domicile and principal place of business was South Carolina, without anticipating that performance would at least in part be made in South Carolina.").

## II.    Venue in This Court is Proper

Minor and HMB next contend that venue is improper in South Carolina. These defendants suggest that California would be a more proper venue since Minor lives there and apparently took certain actions with respect to Prioleau and HMB while in California. Minor's and HMB's argument conflates venue and jurisdiction. Venue is proper in this judicial district because most of the substantial events—and the critical omission that gives rise to Plaintiffs' claims—took place here. Accordingly, Defendants' venue claim fails.

Under Section 1391(b)(2) of Title 28, United States Code, venue is proper in the District of South Carolina so long as "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Here, most of the key events giving rising to Plaintiffs' claims occurred in this district, including:

- Minor and Prioleau met in South Carolina to hammer out the arrangements for Prioleau to serve as Manager of HMB;

- Prioleau signed the Agreement in South Carolina and transmitted it to Plaintiffs from South Carolina;

- Prioleau refused to transfer the Shares to Plaintiffs;

- Minor transmitted to Prioleau in South Carolina the scheme to attempt to undermine the Court's ability to enforce the Agreement.

Minor's affidavit does not contest these facts, presumably because the documentary evidence—and his own emails with Prioleau—undermine his argument and make clear that the key events and omissions giving rise to Plaintiffs' claim occurred in South Carolina.

Finally, without citing any case law, Minor makes a half-hearted attempt to transfer this action to California. Section 1404(a) of Title 28, United States Code, codifies the Court's authority to transfer cases under specified circumstances: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As the moving party, Minor bears the burden of making a clear and convincing showing that the balance of convenience favors the transferee forum. *See Ashmore v. Allied Energy, Inc.,* 2015 WL 128596, at *2 (D.S.C. Jan. 9, 2015). Here, Minor has not identified, let alone evaluated, the relevant factors that inform the Court's transfer analysis. Nor has Minor demonstrated how a California court would have jurisdiction over Prioleau, a necessary party to this action given his role as Manager of HMB during the relevant time. In the absence of performing such analysis, Minor has not satisfied his burden.

III.    **Plaintiffs Have Stated a Breach of Contract Claim Against Prioleau and HMB Ventures, LLC**

A.    **Prioleau Signed the Agreement and is a Party Thereto**

Prioleau's motion to dismiss the breach of contract claim is based on the fallacy that he is not a party to the Agreement. In support of his argument, Prioleau does nothing more than point to the Agreement itself and rely on the unremarkable proposition that a non-party to an agreement cannot have any obligations thereunder. *See* Prioleau MTD at 4.[7] Remarkably, Prioleau fails to acknowledge that he *signed* the Agreement and agreed to be bound by its terms.

In order to state a claim for breach of contract under Delaware law, Plaintiffs must demonstrate "first, the existence of the contract, whether express or implied; second the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Prioleau's primary argument—that he is not party to any contract—is belied by the allegations of the Amended Complaint and by the clear terms of the Agreement.

In his Answer, Prioleau admitted that he covenanted in the Agreement that "I have reviewed this Agreement and agree as to fulfill its terms as to the shares and the seller in my capacity as trustee and acknowledge full receipt of the consideration paid for said shares." *See* Dkt. No. 6 at ¶ 19. Prioleau executed the Agreement following his acknowledgment. *See* Dkt. No. 15-2 at 8. Nowhere in his motion to dismiss does Prioleau argue otherwise. Under Delaware law, while a signature may not be "necessary to the formation of a contract, it may serve as a manifestation of an intent to make a contract." *Carey's Home Constr., LLC v. Estate of Myers*, 2014 WL 1724835, at *4 (Del. Sup. Ct. Apr. 16, 2014) (internal citations omitted); *see also Jones v. Buck*, 90 A. 86, 87 (Del. Sup. Ct. 1914) ("A contract inter parties does not mean a

---

[7] Although Delaware law governs the Agreement, Prioleau fails to cite to a single Delaware case.

contract restricted to the parties signatory thereto, but is a contract that contemplates and relates

to the parties between whom the promises and undertakings are made, and embraces those to

whom as well as those by whom they are made.  When a contract is signed by [all] parties to it,

whether theretofore described as such or not, the inter-relation of the parties, of course, is

obvious . . .").  Prioleau's signature on the Agreement makes clear that he is a party to that

agreement.  Prioleau's nonsensical contention that he was merely a non-party signatory to the

Agreement is simply revisionist history.

> **B.**    **Prioleau, as Manager of HMB, Had Authority to Execute the Agreement and
> to Bind HMB to the Agreement**

As set forth in HMB's LLC Agreement, Prioleau, as Manager, had the authority to enter

into agreements "for the sale, conveyance, restriction or encumbrance of such shares" provided

he had the written consent of the Member.  *See* Scardato Ex. 5.  Such language contravenes

Prioleau's claim that he "had no authority or power, as Manager, to transfer the Shares away

from HMB Ventures."  Docket No. 16-1 at 5.  To the contrary, the fact that Prioleau signed the

Agreement in his role as Manager of HMB is sufficient to establish his apparent authority to

enter into the Agreement.  As the courts of Delaware have explained with respect to apparent

authority:

> A second broad category of authority is not actual authority, being neither express or
> implied.  This class is commonly labelled apparent authority.  In nature and effect, when
> a private corporation is the principal, it amounts to that authority which, though not
> actually granted, the principal knowingly or negligently permits the agent to exercise or
> which it holds him out as possessing.  Thus in respect to apparent authority, when an
> agent of a corporation possesses such authority, the corporation is bound by the act of the
> agent within the scope of his apparent authority as to any person who believes and has
> reasonable grounds to believe that the agent has such authority and in good faith deals
> with him.  In such a case the corporation will be bound to the same extent precisely as if
> the apparent authority were real or actual authority.

*Petition of Mulco Products, Inc.*, 123 A.2d 95, 103-104 (Del. Sup. Ct. 1956).  Nowhere in either

Prioleau's or HMB's briefs do they claim that Plaintiffs were aware of the terms of HMB's LLC

Agreement prior to the execution of the Agreement. Accordingly, there is no way that Plaintiffs could have been aware of any limitations on Prioleau's authority contained therein.

In the absence of such knowledge, Plaintiffs relied in good faith on Prioleau's signature and his statement that he "agree[d] to fulfill its terms as to the shares," to demonstrate his authority to carry out the Agreement. Such good-faith reliance is sufficient to demonstrate Prioleau's apparent authority to execute the Agreement and to be bound by it. *See MetCap Securities LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989 at *9 n.71 (Del. Ch. May 16, 2007) ("Although a motion to dismiss provides the Court with a poor forum for considering the issue of apparent authority, especially because all reasonable inferences must be drawn in favor of the nonmoving party, the Court would eventually be guided by the general maxim within our law that if a third party relies on the agent's apparent authority in good faith and is justified in doing so by the surrounding circumstances, the principal is bound to the same extent as if actual authority had existed.") (internal citations and quotations omitted).

Prioleau's argument that he did not have authority to sign the Agreement is further belied by the fact that he received written authorization from HMB's Member to enter into the Agreement. As the contemporaneous communications make clear, Minor instructed Prioleau to sign the Agreement: "Robert I have reviewed the agreement and personally signed it and I'm comfortable with you signing it. As soon as possible would be helpful. It's part of our financing." Scardato Ex. 6.[8] As such, the Court should not give any consideration to Prioleau's argument that he lacked authority to sign the Agreement.

---

[8] Courts may "consider documents incorporated into a complaint by reference or attached to a motion to dismiss, provided they are integral to the plaintiff's claims and authentic, without converting the motion into one for summary judgment." *Loftus v. F.D.I.C.*, 989 F. Supp.2d 483, 490 (D.S.C. 2013). Since Defendant Prioleau put at issue in his motion to dismiss an assertion that Mr. Minor never "authorized or instructed Prioleau to transfer the Shares to Plaintiffs" (Docket No. 16-1 at 6), the document in which Mr. Minor in fact so authorized such action can be considered by the Court.

Finally, Prioleau's admission that he served as Manager of HMB fatally undermines HMB's claim that it was not a party to the Agreement. It is black letter law in Delaware that "[u]nless otherwise provided in a limited liability company agreement, each member and *manager* has the authority to bind the limited liability company." Del. Gen. Stat. 18-402 (emphasis added). As set forth above, Prioleau clearly had authority to sign the Agreement, both under the theory of apparent authority and because Minor authorized him to sign the Agreement. "Under Delaware law, the 'manager' must have been named as a manger . . . in a limited liability company agreement or similar instrument under which the limited liability company is formed. Once so designated, the manager has the authority to bind the limited liability company." *North American Steel Connection, Inc. v. Watson Metal Products Corp.*, 2013 WL 1095445 at *5 (3d Cir. Mar. 18, 2013). Since Prioleau was clearly designated as the Manager of HMB in the LLC Agreement, *see* Scardato Ex. 5, he clearly had the authority to, and did in fact, bind HMB to the terms of the Agreement. HMB's motion to dismiss does not make any attempt to argue to the contrary, and as such, should be denied.

### C.    Prioleau's Removal as Manager Does Not Excuse his Breach

Prioleau's contention that he cannot be held liable for his breach of the Agreement because is no longer the Manager of HMB lacks any legal support; tellingly, Prioleau fails to cite a single case to support his position. As set forth above, all Plaintiffs need to show to state a claim for breach of contract is (1) the existence of a contract, (2) a breach of an obligation contained in that contract, and (3) damages to the Plaintiffs as a result of that breach. Prioleau's argument that he cannot effectuate any specific performance remedy does not address any of these elements of Plaintiffs' claim and is instead an assertion of an affirmative defense. "Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative

defense is inappropriate." *Reid v. Spazio*, 970 A.2d 176, 183-184 (Del. 2009). Furthermore, his

claim that Plaintiffs have only sought specific performance is simply false: in the Amended

Complaint, Plaintiffs sought an alternative award of damages "[i]n the event that specific

performance is not available" against any specific defendant. Amended Compl. at 9. As such,

the fact that Prioleau *may* no longer be able to transfer the shares,[9] does not relieve him of his

contractual obligation and his motion to dismiss should be denied.[10]

## IV.    Plaintiffs Have Sufficiently Plead a Civil Conspiracy Claim

### A.    The Alleged Actions Are Not Unilateral Actions by Minor or Duplicative

Defendants' motions to dismiss the civil conspiracy claim contend that Prioleau, as

Manager of HMB, never had the authority to effectuate the Agreement and for that reason there

could be no claim of civil conspiracy against Minor, Prioleau, and HMB. Of course, if Prioleau

never had the authority to effectuate the Agreement, then there would be ***no reason*** that Minor

needed to remove him as Manager of HMB.

The Amended Complaint alleges that all of the Defendants conspired to terminate

Prioleau as Manager "with the sole purpose of ensuring that, even if this Court ultimately found

that Prioleau had breached his obligations under the Agreement and was required to transfer the

Shares to Plaintiffs, Prioleau would lack the authority to do so." Amended Compl. ¶ 37.

Defendants ignore this allegation and instead focus on the allegations related to the actions that

were taken by Minor alone as part of the scheme. But Minor's signing of the termination notice

could of course only be accomplished by one person – Minor. Plaintiffs' allegations go beyond

Prioleau's removal; Plaintiffs assert that, upon the filing of the Original Complaint, the

---

[9] It remains Plaintiffs' position that the removal of Prioleau as Manager was a fraudulent act whose sole purpose was to disabuse this Court of its ability and authority to effectuate a remedy.

[10] Prioleau's award of stock options in the Company also undermines Prioleau's claim that he cannot specifically perform the Agreement.

Defendants undertook efforts to hinder this Court's ability to provide a remedy to the Original

Complaint. *Id.* ¶ 38. That misconduct included Prioleau filing his Answer to the Original

Complaint on December 15, 2016—while still the Manager of HMB—in which he wrongfully

denied that "he has the authority to effectuate the transfer of shares . . . ." Amended Compl. ¶

34. At the time, as Manager of HMB, Prioleau unquestionably had the authority to transfer the

shares.

The very next day, December 16, 2016, Minor signed the termination notice in an effort

to subvert this Court's authority. *See id.* ¶ 35. Prioleau's motion to dismiss attempts to avoid the

clear implications of this timeline by disingenuously stating that "Minor notified Prioleau ***on or***

***before*** December 15, 2016" that he would be terminated. Docket No. 16-1 at 7. Of course, the

allegations of the Amended Complaint and documentary evidence contradict Prioleau's claim.[11]

Finally, Defendants contend that the civil conspiracy claim is duplicative of Plaintiffs'

claim for breach of contract accompanied by a fraudulent act. As set forth above, the Amended

Complaint unquestionably includes allegations of Prioleau's involvement in the civil conspiracy,

including his efforts to mislead this Court by submitting an Answer that contained misstatements

of fact. The allegations of Prioleau's involvement, therefore, are not duplicative of the claims

related to the breach of contract accompanied by a fraudulent act (which focus only on Minor's

conduct) and are therefore sufficient to state a claim for civil conspiracy.

**B.      Plaintiffs Have Plead Special Damages**

Defendants' final contention, that Plaintiffs have not pled special damages, contravenes

well-settled South Carolina law. It is black-letter law in South Carolina that attorneys' fees and

---

[11] As the Court is aware, "because civil conspiracy is by its very nature covert and clandestine, it is usually not provable by direct evidence." *Moore v. Weinberg*, 644 S.E.2d 740, 750 (S.C. Ct. App. 2007) (internal citations omitted). Not only are Plaintiffs' civil conspiracy allegations well-plead in the Amended Complaint, they are also supported by documentary evidence produced by Defendant Prioleau.

costs incurred in connection with having to defend or prosecute a claim separate from a breach of contract claim are sufficient to satisfy the special damages requirement. *See Benedict College v. National Credit Systems, Inc.*, 735 S.E.2d 518, 522 (S.C. Ct. App. 2012) (holding that damages of costs and attorneys' fees under civil conspiracy claim were separate and distinct from damages sought in breach of contract claim and therefore constituted special damages); *Integrity Worldwide, Inc. v. Int'l Safety Access Corp.*, 2015 WL 1297823, at *3-4 (D.S.C. Mar. 23, 2015) ("When attorneys' fees are requested as special damages, South Carolina courts have routinely departed from the general rule and permitted the recovery of attorneys' fees."). Had Prioleau, Minor and HMB not engaged in their scheme to denude this Court of its ability to order the relief sought in the original complaint, Plaintiffs would not have been forced to expend the time, resources, and effort to file the claims against Minor and HMB. Those costs incurred investigating and litigating the additional claims against Minor and HMB are therefore additive to the costs and fees that would have been incurred litigating the Original Complaint against Prioleau alone. As such, they are damages separate and distinct from the damages sought under the breach of contract claims and are sufficient to establish special damages at the pleading stage. *See Integrity Worldwide*, 2015 WL 1297823 at *3-4 (finding a request for attorneys' fees as special damages sufficient to withstand a motion to dismiss where the attorneys' fees were not duplicative of other relief sought).

## CONCLUSION

For all of the foregoing reasons, Defendants' motions to dismiss the Amended Complaint should be denied in their entirety.

By: /s/ Michael A. Scardato
Michael A. Scardato (FED ID 03744)
MCNAIR LAW FIRM, P.A.
100 Calhoun Street, Suite 400
Charleston, SC 29401
Tel: (843) 723-7831

Michael Q. English
Evan I. Cohen
FINN DIXON & HERLING LLP
6 Landmark Square
Stamford, CT 06901
Tel: (203) 325-5000
