IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Outpost Capital Management, LLC, *and* Bill Laggner, <br><br> Plaintiffs, <br><br> v. <br><br> Robert Prioleau, *as Manager of HMB Ventures, LLC*; HMB Ventures, LLC; *and* Halsey Minor, <br><br> Defendants. | Civil Action No. 2:16-3684-RMG <br><br> **ORDER AND OPINION** |

This matter is before the Court on Defendant Robert Prioleau's motion to dismiss for failure to state a claim (Dkt. No. 42) and Defendants HMB Ventures, LLC's and Halsey Minor's motion to dismiss for lack of personal jurisdiction, lack of service, improper venue, and failure to state a claim (Dkt. No. 43). For the reasons set forth below, the Court grants Mr. Prioleau's motion to dismiss and grants HMB Ventures and Halsey Minor's motion to dismiss.

**I.     Background**

Halsey Minor, a resident of California, founded Uphold Ltd. (originally named BitReserve, Ltd.), a digital currency business. After an October 2013 meeting in Charleston, South Carolina, Mr. Minor established BitReserve, Ltd., a Cayman Island's corporation, as a holding company that would operate through United States-based subsidiaries. Mr. Minor served as the chairman of BitReserve, Ltd.'s board and became Chief Executive Officer shortly after its formation. Mr. Minor undertook an evaluation process to determine which states would have the most favorable regulatory environment for the planned operating subsidiaries. He determined that South Carolina provided a favorable regulatory environment for Uphold's operations, and he decided to incorporate BitReserve HQ, Inc. (Uphold's operating subsidiary), in South Carolina.

Mr. Minor had a prior personal bankruptcy, which created regulatory issues, so he created a voting trust for his Uphold shares, with a trustee having independent authority to vote the shares. In 2015, Mr. Minor allegedly met an old high school friend, Robert Prioleau, in Charleston, South Carolina, about serving as the trustee. Mr. Prioleau agreed to serve as trustee. Mr. Minor then established HMB Ventures, LLC to hold the shares. Mr. Minor was the sole member of the LLC and Mr. Prioleau the sole manager. The agreement stated the manager had "sole, complete and unrestricted right to vote" the shares held in HMB Ventures. (Dkt. No. 46-12 at 4.) It also provided that Mr. Minor retained the right to sell or convey any shares held by HMB Ventures and that Mr. Minor could replace the LLC manager with another independent person at any time for any reason. (*Id.* at 4–5.) Plaintiffs allege the voting trust was a sham and that Mr. Minor in fact controlled the voting of the shares.

In 2016, Plaintiffs, Mr. Minor, and (allegedly) Mr. Prioleau entered into a stock purchase, transfer, and voting agreement (the "Share Transfer and Voting Agreement"). The Share Transfer and Voting Agreement called for the transfer of 4,843,890 shares to each of the Plaintiffs (totaling 9,687,780 shares) for nominal consideration on the date that Uphold's board "approves such company's next financing," which is a condition precedent. Defendants assert the purpose of the agreement was to transfer shares in exchange for financing from Plaintiffs for Uphold. Despite having divested his right to vote his shares to a voting trust, Mr. Minor also agreed "to vote his and any of his affiliates remaining shares in BitReserve Ltd. according to the vote recommended by the majority of the Board of Directors of BitReserve, Ltd. until such time as BitReserve has completed a financing raising at least $15mm at a pre-money valuation in excess of $85mm." (Dkt. No. 46-16 at 2.) On June 28, 2016, Minor allegedly instructed Mr. Prioleau to sign the Share Transfer and Voting Agreement, since Mr. Prioleau allegedly had the sole authority to transfer the

Shares. Mr. Prioleau signed the Share Transfer and Voting Agreement and agreed to "fulfill its terms as to the shares and the seller in my capacity as trustee and acknowledge full receipt of the consideration paid for said shares." (*Id.* at 4.) Plaintiffs allege Uphold's board approved the financing agreement with Plaintiffs on July 30, 2016. Defendants assert Uphold's board rejected the financing agreement. There is no allegation that Plaintiffs actually provided any financing.

On November 18, 2016, Plaintiffs sued Mr. Prioleau, alleging breach of contract and seeking specific performance of the share transfer. Mr. Minor responded by terminating Mr. Prioleau from HMB Ventures. Plaintiffs then amended the complaint, adding HMB Ventures and Mr. Minor as Defendants and asserting additional causes of action for civil conspiracy and breach of contract accompanied by a fraudulent act. Mr. Prioleau moved to dismiss for failure to state a claim, and Mr. Minor and HMB Ventures moved to dismiss for lack of personal jurisdiction. The Court ordered jurisdictional discovery, now complete, after which Defendants renewed their motions to dismiss.

## II.  Legal Standard

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id.* However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The Court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398,

404–05 (D.S.C. 2012) (internal quotation and alteration marks omitted); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotation marks omitted).

However, "[i]f the jurisdictional facts 'are so intertwined with the facts upon which the ultimate issues on the merits must be resolved,' then '"the entire factual dispute is appropriately resolved only by a proceeding on the merits."'" *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219–20 (4th Cir. 1982) (citation omitted) (regarding subject-matter jurisdiction). In such case, a district court may assume jurisdiction, reserve the question of jurisdiction, and determine relevant jurisdictional facts on a motion going to the merits or at trial. *See United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) (regarding subject-matter jurisdiction).

To meet their burden, Plaintiffs must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g., Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130–31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F. Supp. 352, 352 (D.S.C. 1994).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Plaintiffs do not claim that the Court has general personal jurisdiction over Defendants HMB Ventures and Halsey Minor. To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397 (citing *ALS Scan*, 293 F.3d at 711–12; *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 & n.8). In other words, the defendant must have "minimum contacts" with the forum, *see Burger King*, 471 U.S. at 471–76, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. Courts evaluate the reasonableness of personal jurisdiction by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are aspects of the requirement of due process, and thus "considerations sometimes serve to establish the reasonableness of

jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

## B.     Motion to Dismiss for Lack of Service

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant can move to dismiss a complaint where service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Rule 4(m) requires service of process within ninety days after the complaint is filed. If service does not occur within that period, the court must dismiss the action unless the plaintiff shows good cause for the failure, in which case the court must extend the time for service. Fed. R. Civ. P. 4(m).

## C.     Motion to Dismiss for Improper Venue

"The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Under Federal Rule of Civil Procedure 12(b)(3), a party may seek dismissal for improper venue. "On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings. A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 (4th Cir. 2012) (citation omitted). The court must view the facts in the light most favorable to the plaintiff when determining whether there has been a prima facie showing of proper venue. *Id.*

Title 28 U.S.C. § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1406(a) "authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *In re Carefirst*

*of Md.*, 305 F.3d at 256. "[T]he choice to transfer or dismiss a case afforded by § 1406(a) lies within the sound discretion of the district court." *Quinn v. Watson*, 145 F. App'x 799, 800 (4th Cir. 2005).

### D. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. Civil Conspiracy Claims

Plaintiffs allege that, after the filing of this action, Defendants conspired to remove Mr. Prioleau as manager of HMB Ventures to make impossible the remedy Plaintiffs originally sought—Prioleau's specific performance of the Share Transfer and Voting Agreement. Plaintiffs allege this purported civil conspiracy forced them to amend the complaint, causing them to incur additional attorney's fees.

Under South Carolina law, a civil conspiracy is a combination of two or more persons to injure the plaintiff that proximately causes special damages. The elements of a civil conspiracy claim are (1) a combination of two or more persons, (2) with a purpose of causing injury to the plaintiff, and (3) special damages. *See LaMotte v. Punchline of Columbia, Inc.*, 370 S.E.2d 711, 712–13 (S.C. 1988). The agents of a company are capable of conspiring among themselves, but a company cannot conspire with itself or its wholly owned subsidiary. *See Alonso v. McAllister Towing of Charleston, Inc.*, 595 F. Supp. 2d 645, 652–53 (D.S.C. Jan. 20, 2009); *Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 383 (S.C. Ct. App. 2010). There can be no civil conspiracy if the alleged misconduct is a single act of a single company acting exclusively through its own directors, officers, or employees, each acting within the scope of his employment. *McMillian v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 887 (S.C. 2006).

Plaintiffs' civil conspiracy claims have no merit. The alleged misconduct is the termination of Mr. Prioleau from HMB Ventures, but there is no allegation suggesting that the termination of Mr. Prioleau was not a single act of a single company, HMB Ventures, acting exclusively through its own member, Mr. Minor, acting within the scope of his membership. Further, a purported combination of Mr. Prioleau and Mr. Minor could not proximately cause any damage resulting from Mr. Prioleau's termination because Mr. Minor at all times had full authority to terminate Mr.

Prioleau without regard to Mr. Prioleau's desires. Proximate causation requires actual, "but-for" causation, *McKnight v. S.C. Dep't of Corrs.*, 684 S.E.2d 566, 569 (S.C. Ct. App. 2009), and it cannot be said that, but for some machination between Mr. Minor and Mr. Prioleau, Mr. Minor would not or could not have removed Mr. Prioleau from HMB Ventures. Still further, Plaintiffs' claim that the termination of Mr. Prioleau damaged them by forcing them to incur additional attorney's fees to amend the complaint to name additional parties fails because the original complaint was defective on its face. Mr. Minor, the owner of all the disputed shares and the party identified as the "Seller" in the agreement Plaintiffs seek to enforce, clearly was a necessary party under Rule 19 of the Federal Rules of Civil Procedure. Indeed, it appears Mr. Prioleau never had authority to transfer the shares to Plaintiffs without Mr. Minor's direction. (*See* Dkt. No. 46-12 at 4–5.) Plaintiffs would have had to amend the complaint to include Mr. Minor regardless of Prioleau's termination.

The Court therefore dismisses the third cause of action in the amended complaint as to all parties.

**B.    Specific Performance Claim Against Robert Prioleau**

There is no plausible allegation that Mr. Prioleau currently has authority to vote shares held in HMB Ventures or to transfer any Uphold shares from HMB Ventures or Mr. Minor to Plaintiffs. To the contrary, Plaintiffs allege Mr. Minor terminated Mr. Prioleau and modified HMB Ventures' operating agreement to give himself full authority to transfer shares held by HMB Ventures. (*See* Dkt. No. 12 ¶ 37.)[1] Moreover, the previous, unmodified operating agreement did not permit Mr. Prioleau to transfer shares independently of Mr. Minor. (Dkt. No. 46-16 at 5.) Assuming all

---

[1] Plaintiffs artfully claim Mr. Minor "attempted" to terminate Mr. Prioleau and "purported" to amend the operating agreement, but there is no allegation that he lacked the ability to take those actions or failed to complete them.

complaint allegations to be true, Plaintiffs fail to state a claim against Mr. Prioleau for specific enforcement of the Share Transfer and Voting Agreement. Plaintiffs' only other claim against Mr. Prioleau is the civil conspiracy claim that the Court dismisses for the reasons set forth above. Because there are no remaining claims against Mr. Prioleau, his motion to dismiss is granted, and he is dismissed from this action.

### C. Service of Process on HMB Ventures

HMB Ventures argues claims against it should be dismissed because Plaintiffs never served it process. HMB Ventures obviously had notice of this action and understood the need to respond, given that it has filed, to date, three motions to dismiss, four motions for an extension of time, two motions to admit attorneys *pro hac vice*, and a stipulation to withdraw motions. When a defendant has "actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Here, the amended complaint was served on HMB Ventures' sole member, Halsey Minor. The Limited Liability Company Agreement provides that Mr. Minor is the general agent of HMB Ventures. (Dkt. No. 19-7.) Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure authorizes service on a company by delivery of the summons and complaint to a general agent. Mr. Minor does not dispute service. The summons served on Mr. Minor was directed to each Defendant separately, including HMB Ventures. (Dkt. No. 13.) The only violation of Rule 4 was Plaintiffs' failure to provide proof of service specific to HMB Ventures. But failure to prove service does not affect the validity of service. Fed. R. Civ. P. 4(l)(3). The Court therefore finds that the amended complaint was validly served on HMB Ventures on February 7, 2017.

## D. Personal Jurisdiction over HMB Ventures and Halsey Minor

HMB Ventures and Mr. Minor challenge this Court's personal jurisdiction. When personal jurisdiction is challenged, the plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence. *See Combs*, 886 F.2d at 676. Jurisdictional discovery has been completed and the Court has received voluminous written submissions. When, as here, the court resolves a challenge to personal jurisdiction on written submissions, the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id.* The Court must construe the record "in the light most favorable to" Plaintiffs and must draw "all inferences and resolv[e] all factual disputes in" Plaintiffs' favor. *See Sonoco*, 877 F. Supp. 2d at 404–05. However, the Court "need not credit conclusory allegations or draw farfetched inferences." *Id.* at 405 (internal quotation marks omitted).

Because South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process, Plaintiffs satisfy their burden merely by showing that the exercise of personal jurisdiction over Defendants satisfies due process requirements. *Cf. ESAB*, 34 F. Supp. 2d at 328. Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. at 316 (internal quotation marks omitted)). Plaintiffs assert the Court has specific personal jurisdiction over HMB Ventures and Mr. Minor. To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397.

### 1. *Personal Jurisdiction over Halsey Minor*

Plaintiffs argue this Court has specific personal jurisdiction over Mr. Minor for three reasons: (1) the Share Transfer and Voting Agreement was to be performed in South Carolina, (2) Mr. Prioleau, a South Carolina resident, was Mr. Minor's agent for the transaction giving rise to this action, and (3) the claims against Mr. Minor arise from conduct that occurred in South Carolina. The Court need only consider Plaintiffs' agency argument because it finds that Mr. Prioleau was Mr. Minor's agent for the Share Transfer and Voting Agreement, and that Mr. Prioleau's contacts with South Carolina are imputable to Mr. Minor.

In diversity cases, courts look to the forum choice of law rules to decide what substantive law on agency applies to the question of whether a subsidiary acts as the agent of the parent. *Joye v. Heuer*, 813 F.Supp. 1171, 1173 (D.S.C. 1993); *see also, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1107 (S.D. Cal. 2011); *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at *9 (W.D. La. Sept. 30, 2010); *Hitachi Med. Sys. America, Inc. v. Branch*, 2010 WL 816344, at *5 (N.D. Ohio March 4, 2010); *Time, Inc. v. Simpson*, 2003 WL 23018890, at *2–3 (S.D.N.Y. Dec. 22, 2003). "Choice of law clauses are generally honored in South Carolina." *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011). The agreement for Mr. Prioleau to serve as the manager of Mr. Minor's voting trust has a Delaware choice of law provision. (Dkt. No. 46-12 at 7.) The Court therefore concludes Delaware's law of agency applies in this case.

Under Delaware law, "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. 1997) (internal quotation marks omitted). Mr. Prioleau has testified that Mr. Minor controlled and directed his acts, but an agency may not be established solely by the declarations and conduct of an alleged agent. *See* Restatement (Second) of Agency

§ 15 (1958) & cmts. a & b. Moreover, whether Mr. Minor actually had the right to direct the trustee of his voting trust to execute the Share Transfer and Voting Agreement is questionable. (*See* Dkt. No. 46-12 at 4.) The actions of the principal, however, may establish an agent's apparent authority. "Manifestations by the alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal create an apparent agency from which spring the same legal consequences as those which result from an actual agency." *Billops v. Magness Const. Co.*, 391 A.2d 196, 198 (Del. 1978). "In order to establish a chain of liability to the principal based upon apparent agency, a litigant must show reliance on the indicia of authority originated by the principal, and such reliance must have been reasonable." *Id.* (citations omitted).

Here, there can be no dispute that Mr. Minor intentionally, explicitly, and directly represented to Plaintiffs that he had authority to control the conduct of Mr. Prioleau with regard to the Share Transfer and Voting Agreement. (*See* Dkt. Nos. 46-16 at 4, 46-17, 46-18.) Plaintiffs allege they reasonably relied upon that representation—an allegation "intertwined with the facts upon which the ultimate issues on the merits must be resolved" that the Court must assume true at this stage of the proceedings. *See, e.g., United States ex rel. Vuyyuru*, 555 F.3d at 348 (4th Cir. 2009). The Court therefore finds that Mr. Prioleau had apparent authority to act on Mr. Minor's behalf with regard to the Share Transfer and Voting Agreement.

Mr. Prioleau's contacts with South Carolina regarding that agreement therefore are imputable to Mr. Minor. "For purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993); *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990); *Davis v. Asano Bussan Co.*, 212 F.2d 558, 563 (5th Cir. 1954); *Daughtry v. Arlington County*, 490 F. Supp. 307, 313 (D.D.C.1980). The record shows

Mr. Prioleau's conduct with regard to the Share Transfer and Voting Agreement occurred entirely in South Carolina. His contacts with South Carolina therefore are sufficient to establish sufficient minimum contacts with regard to that transaction.

A sufficient quantum of contact with South Carolina is necessary but not sufficient for jurisdiction to lie in South Carolina. Mr. Minor has sufficient contacts with South Carolina for specific personal jurisdiction because his apparent agent operated exclusively from South Carolina. But Plaintiffs have the additional burdens of showing that their claims arise out of activities directed at South Carolina, and that exercise of personal jurisdiction in South Carolina would be reasonable.

"The exercise of th[e] privilege [of conducting corporate activities within a State] may give rise to obligations, and, *so far as those obligations arise out of or are connected with the activities within the state*, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.10 (2014) (quoting *Int'l Shoe*, 326 U.S. at 319) (emphasis in original). Here, Mr. Minor, a California resident, contracted to transfer shares in a Cayman Islands company, held in a Delaware voting trust, to a Texas resident and to a Connecticut company not registered in South Carolina. The agreement has a Delaware choice of law provision. The voting trustee, Mr. Prioleau, operated from South Carolina, but Plaintiffs' claims do not arise from Mr. Prioleau's voting of the shares. The agreement was for the shares to be voted "according to the vote recommended by the majority of the Board of Directors of BitReserve, Ltd. until such time as BitReserve has completed a financing raising at least $15mm at a pre-money valuation in excess of $85mm." (Dkt. No. 46-16 at 2.) Plaintiffs have not alleged that voting provision was violated. Their allegation is that Mr. Minor has not transferred the shares as agreed. (*See* Dkt. No. 12 ¶¶ 31–34.) For relief they seek

specific performance of the transfer. As noted above, Mr. Prioleau—who is the transaction's sole nexus with South Carolina—never had authority to transfer the shares. Thus, Mr. Minor's obligation to transfer shares to Plaintiffs did not arise from (and is not in any relevant way connected to) Mr. Prioleau's presence in South Carolina.

Plaintiffs' arguments that the claims against Mr. Minor arise out of conduct in South Carolina are unavailing. The fact that Uphold's operating subsidiary is based in South Carolina has no apparent relevance to the Share Transfer and Voting Agreement. The fact that Mr. Minor may have been at a vacation rental in Kiawah, South Carolina during a portion of the negotiations of the Share Transfer and Voting Agreement in no way suggests that claims arising out of a purported breach of that agreement arise from or relate to Mr. Minor's vacation in South Carolina. Further, Plaintiffs agreed to a Delaware choice of law provision in the agreement.

Because Plaintiffs have failed to show their claims arise from Mr. Minor's contacts with South Carolina, the Court grants his motion to dismiss for lack of personal jurisdiction.

2.  *Personal Jurisdiction over HMB Ventures*

Plaintiffs argue specific jurisdiction over HMB Ventures lies in South Carolina because HMB Ventures is purportedly Mr. Minor's alter ego and because Mr. Prioleau was its agent with respect to the Share Transfer and Voting Agreement. HMB Ventures is obviously Mr. Minor's alter ego, but that is insufficient to establish personal jurisdiction because the Court finds Plaintiffs' claims against Mr. Minor do not arise from his contacts with South Carolina. Plaintiffs' agency theory likewise fails with regard to HMB Ventures for the same reason that it fails with regard to Mr. Minor—although Mr. Prioleau is HMB Ventures' agent and his contacts with South Carolina are imputable to HMB Ventures, Plaintiffs' claims do not arise from those imputed contacts.

The Court therefore grants HMB Ventures' motion to dismiss for lack of personal jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Robert Prioleau's motion to dismiss (Dkt. No. 42) and **GRANTS** Defendants HMB Ventures, LLC's and Halsey Minor's motion to dismiss (Dkt. No. 43). Count one of the complaint is **DISMISSED WITH PREJUDICE** as to Robert Prioleau and **DISMISSED WITHOUT PREJUDICE** as to Halsey Minor and HMB Ventures, LLC. Count two of the complaint is **DISMISSED WITHOUT PREJUDICE**. Count three of the complaint is **DISMISSED WITH PREJUDICE** as to all Defendants.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November 12, 2017
Charleston, South Carolina